UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF RICARDO ESCOBEDO, *et al.*, | No. C-03-3204 MJJ (EMC) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION RE DEFENDANTS' MOTION TO ENFORCE SETTLEMENT** |
| CITY OF REDWOOD CITY, *et al.*, | **(Docket No. 101)** |
| Defendants. / | |

Plaintiffs in this case are the Estate of Ricardo Escobedo and the two minor children of Ricardo Escobedo, Justin and Devin. The Estate has two administrators, who are the brothers of Ricardo Escobedo: Antonio Escobedo and Robert Escobedo. Both minor children purport to have guardians ad litem, namely, their mothers – respectively, Denise Guidici and Tracy Gagey. Plaintiffs filed suit against Defendants the City of Redwood City and eight individual police officers, alleging, *inter alia*, that the officers' use of force led to the death of Ricardo Escobedo. Pending before the Court is Defendants' motion to enforce a settlement negotiated by Judge Zimmerman. Both the Estate and Devin contest the settlement; Justin does not. Having considered the parties' briefs and accompanying submissions, the Court hereby recommends that Defendants' motion to enforce the settlement be GRANTED in part and DENIED in part.[1]

---

[1] *See Engineered Data Prods., Inc. v. Art Style Printing, Inc.*, 71 F. Supp. 2d 1073, 1077-78 (D. Colo. 1999) (treating a magistrate judge's order on a motion to enforce a settlement as a recommendation because such a motion is "of the nature of a dispositive motion").

## I.   FACTUAL & PROCEDURAL BACKGROUND

On January 28, 2005, Judge Jenkins issued an order granting in part and denying in part Defendants' motion for summary judgment. *See generally* MJJ Order of 1/28/05. The order left for trial the claim for excessive force against the individual police officers, the claim for deprivation of familial relationship against all Defendants, and the claim for wrongful death against all Defendants.

Several days later, on January 31, 2005, a settlement conference was held before Judge Zimmerman. *See generally* Howard Decl., Ex. A (transcript of settlement conference). Neither administrator of the Estate (*i.e.*, Antonio Escobedo or Robert Escobedo) appeared at the settlement conference. Another brother of Ricardo Escobedo (*i.e.*, Rudy Escobedo) was present but he had no authority to bind the Estate. *See id.* (Tr. at 4). Also present at the settlement conference were Ms. Guidici on behalf of her son Justin and Ms. Gagey on behalf of her son Devin. *See id.* (Tr. at 5).

A settlement was reached on that day and put on the record. Judge Zimmerman specifically asked Ms. Gagey, as guardian for Devin, whether she was "generally satisfied with these terms and willing to settle on behalf of [her] son." *Id.* (Tr. at 15). Ms. Gagey responded, "Yes." *Id.* (Tr. at 15). Judge Zimmerman noted several times on the record that the settlement with respect to the two minor children was "going to have to ultimately be approved by Judge Jenkins with a petition to approve a minor's compromise." *Id.* (Tr. at 5); *see also id.* (Tr. at 12) ("I will tell Judge Jenkins, I'll send him an e-mail, and tell him that we have reached a tentative settlement, it is subject to approvals by the defense. And once those come, it will be submitted to him for approval of a minor's compromise.").

The settlement appears to have been approved by the City Council for Defendants. *See id.* (Tr. at 12) (noting that settlement was tentative, "subject to the approvals by the defense"). In early March 2005, Ms. Guidici and Ms. Gagey signed a general and special release with respect to the claims of the two minor children. *See id.*, Ex. B (general and special release). The administrators of the Estate, however, refused to sign the agreement. *See* Docket No. 74 (letter, filed on 3/22/05, from J. Scott to J. Jenkins). Plaintiffs' counsel, who had been representing both the minor children and the Estate, advised the administrators of the Estate to find new counsel. *See id.*

2

1    On March 22, 2005, Ms. Guidici and Ms. Gagey filed a petition to compromise the claims of the minor children. *See* Docket No. 75 (petition, filed on 3/22/05). Judge Jenkins referred the petition to compromise the minors' claims to Judge Zimmerman. *See* Docket No. 80 (order, filed on 3/24/05). Several weeks later, Ms. Gagey filed an opposition to the proposed settlement. *See* Docket Nos. 84-85 (Gagey Decl. & Exs.). In a declaration, Ms. Gagey admitted that she had attended the settlement conference on January 31 and that "[a] settlement was reached which I agreed to." Docket No. 84 (Gagey Decl.). However, she "did not discuss the proposed settlement with [Devin] prior to [her] agreeing to the settlement. [¶] In March 2005, [Devin] expressed dissatisfaction with the proposed settlement. He stated . . . that he wants justice for his father which would be a jury trial and was not interested in settling for monetary damages." *Id.*

In another declaration subsequently submitted, Ms. Gagey provided additional details. According to Ms. Gagey, she "did not get any information about the January 2005 conference call until less than one week before the conference was scheduled to occur. No one discussed possible settlement terms with me before the conference, and I did not discuss possible settlement terms with Devin before the conference." Docket No. 96 (Martel Decl., Ex. G) (Gagey Decl. ¶ 3). Ms. Gagey also stated that she "felt very pressured by the judge and all the attorneys present to settle the case at the settlement conference. I had serious misgivings about the settlement, but after the judge spoke to me I thought I had no choice but to accept the settlement. I did not discuss the proposed settlement with Devin before agreeing to it at the settlement conference." *Id.* (Gagey Decl. ¶ 4). Even though Devin told Ms. Gagey, after she returned from the conference, that he did not want to settle the case, Ms. Gagey signed the settlement papers and did not talk to Devin beforehand about signing the papers. *See id.* (Gagey Decl. ¶¶ 5-6).

In a letter attached to the opposition to the proposed settlement, Devin confirmed that he did not want to proceed with the settlement:

> I feel that what the 8 cops did was wrong and there needs to be something done about it. . . . I don't think it is right to kill someone then not even apologize and say heres [sic] $70,000 [Devin's portion of the settlement] for your trouble. That is just not right. I think that the cops should never be able to work as a cop again. In other states if a cop slams a guy down on the ground then that guy can sue and get $1.5 million for a bruise and the cops do get prosecuted. I feel that the

3

> cops need to be put to justice and should pay a lot more. I think that its [sic] not right that people can just cover up something this bad and get away with it. . . .

Docket No. 85 (letter from Devin, dated 4/13/05).

In a declaration subsequently submitted, Devin made similar statements, noting, *e.g.*, that "[n]o one told me beforehand about the January 2005 settlement conference in this case. I first learned about the settlement conference from my aunt, who called me from California while the settlement conference was happening. My aunt was not there at the settlement conference, but she told me it was going on." Docket No. 96 (Martel Decl., Ex. F) (Devin Escobedo Decl. ¶ 3). According to Devin, "The day after the settlement conference, I told my mother that I did not want to settle the case, especially for the amount that the defendants were offering. I said I wanted the case to go to trial. [¶] I was not aware of my mother signing papers to settle the case before or at the time she signed any papers." *Id.* (Devin Escobedo Decl. ¶ 4). Devin also stated "I do not want to settle this case, unless the settlement is specific enough that it makes the police officers accountable for the death of my father. If there is not a settlement like that, I want to go to trial." *Id.* (Devin Escobedo Decl. ¶ 6).

On April 13, 2005, the administrators of the Estate submitted a letter to Judge Zimmerman in response to his order requiring them to explain why they did not sign the settlement agreement. *See* Howard Decl., Ex. F (letter, dated 4/13/05, from administrators of Estate to J. Zimmerman); *see also* Docket No. 82 (BZ order, filed on 3/31/05). In the letter, the administrators stated, "[f]or us this case is not about money, but about seeing some sort of justice done. Since no criminal charges were filed, this civil case was our only outlet." Howard Decl., Ex. F. The administrators also stated that "we were not notified" of the settlement conference before Judge Zimmerman on 1/31/05: "We are surprised that Mr. Daar and Mr. Scott, as lawyers, would counsel us to sign documents when we had no involvement or knowledge of what happened in the settlement conference." *Id.*

On May 4, 2005, Judge Zimmerman held a hearing on the petition to compromise the minors' claims. *See* Howard Decl., Ex. E (transcript of 5/4/05 hearing). (By this time, Devin and the Estate were now represented by new counsel.) At the hearing, Judge Zimmerman expressed concern about the settlement because the administrators of the Estate had not been present at the

settlement conference. *See id.* (Tr. at 6-8). Former counsel for the Estate and Devin said that they had informed both Ms. Guidici and Ms. Gagey about the settlement conference and "we made [a] mistake and presum[ed] that they were in contact with the family and the Estate." *Id.* (Tr. at 12). Judge Zimmerman also expressed concern with two additional matters: (1) that it was not clear that Ms. Gagey had in fact been appointed as guardian ad litem for Devin, *see id.* (Tr. at 10, 14), and (2) whether Ms. Gagey was in fact an appropriate guardian given that she failed to talk to Devin about the settlement. *See id.* (Tr. at 13-15) ("I just find it difficult to have somebody serving as a guardian for somebody who is not talking about settling a case and so on and so forth and doesn't seem to know, you know, where her sons' [sic] interests are.").

Judge Zimmerman concluded that he was going to put off the petition to compromise the minors' claims until "somebody rules whether the settlement was enforceable." *Id.* (Tr. at 11); *see also id.* (Tr. at 16) ("If it turns out that that settlement can be enforced, . . . then I come back to approve – the formality of approving the minors' compromise."); *id.* (Tr. at 24) (stating that the purpose of the minors' compromise "is to see whether the allocations are proper, approving the attorneys' fees and things of that sort[,] [n]ot revisiting the underlying question of whether there was a settlement"). Judge Zimmerman also stated that he would put on the "back burner" "how [he] came to wind up with the wrong Escobedo brother [*i.e.*, not the administrators of the Estate] and a guardian who appears at a settlement conference without knowing what her son wants." *Id.* Judge Zimmerman stated that, "[i]f the settlement is enforced, in my mind that will resolve all the questions about whether my settlement order which required certain people to be present with certain authority was honored." *Id.* (Tr. at 18); *see also id.* (Tr. at 19) (noting the possibility that someone could "conclude[] that the thing cannot be consummated because the right people weren't there or they didn't have the authority they should have had").

Subsequently, Defendants filed their motion to enforce the settlement.

## II. DISCUSSION

A.  <u>Authority to Settle</u>

As a preliminary matter, the Court acknowledges Judge Zimmerman's concerns as to whether the settlement should be enforced when (1) it is not clear whether Ms. Gagey was in fact

5

1. appointed Devin's guardian ad litem and, even if she were, whether she was an appropriate guardian
2. ad litem and (2) the administrators of the Estate were not present at the settlement conference.

Regarding (1), none of the parties have contested Ms. Gagey's status as guardian ad litem or her ability to act as such. The Court therefore shall not address the issue *sua sponte*. As for (2), that is a different matter.

The question with respect to the administrators of the Estate is whether their absence from the settlement conference should be a basis for denying the motion to enforce settlement. According to Defendants, the Estate does not have standing to contest the settlement agreement: "The personal representatives of the Estate of Ricardo Escobedo . . . have no interest of any kind in the wrongful death claim. All interest in the claim belongs solely to the decedent's surviving children." Mot. at 15; *see also* Reply at 5 ("The representatives of the estate have no financial interest in the litigation; they act solely for the estate's beneficiaries – the two minors.") (citing *Mayo v. White*, 178 Cal. App. 3d 1083, 1091 (1986) ("[A] cause of action for wrongful death under Code of Civil Procedure section 377 clearly is not an asset of the estate of the decedent. On the contrary, the cause of action is vested in the 'heirs' as defined in the Probate Code . . . .").

In their opposition, Devin and the Estate do not contest that the Estate lacks standing with respect to the claim for wrongful death; rather, their contention is that the Estate is "the only party with standing to assert Ricardo Escobedo's claim for excessive force [under § 1983]." Opp'n at 9; *see also* 1C Schwartz & Kirklin, Section 1983 Litigation § 13-1, at 73-74 (3d ed. 1997) (distinguishing survival claims from wrongful death claims). Defendants failed to address this contention in their reply brief.

The Court agrees with the Estate that it does have standing to assert the § 1983 claim because the § 1983 claim survives the death of Ricardo Escobedo. As noted in one learned treatise:

> Numerous lower federal courts have held that, when the deprivation of federal rights *results* in death, state laws that abate the § 1983 claim or that limit the recovery are inconsistent with § 1983, and, therefore applied a federal rule of survivorship. The dominant theme of these decisions is that a federal rule of survivorship is necessary to carry out the policy of deterring constitutional violations by state and local officials that result in death. "[I]f Section 1983 did not allow recovery for loss of life notwithstanding inhospitable state law,

6

> deterrence would be further subverted since it would be more advantageous to the unlawful actor to kill rather than injure." . . .

1C Schwartz & Kirklin, Section 1983 Litigation § 13.2, at 78 (emphasis added). *See, e.g., Guyton v. Phillips*, 532 F. Supp. 1154, 1165-66 (N.D. Cal. 1981) (Patel, J.) ("find[ing] no cases where a cause of action for deprivation of civil rights did not survive when the actions giving rise to the claim were also the cause or a contributing factor to the death of the decedent"; adding that "California's survival statute, insofar as it excludes recovery for pain and suffering, is inconsistent with § 1983"). *But see Venerable v. City of Sacramento*, 185 F. Supp. 2d 1128, 1133 (E.D. Cal. 2002) ("In light of the damages that are provided by the California survival and wrongful death statutes, the court finds that state law is not inconsistent with the Constitution and laws of the United States. Because state law does not permit recovery of a decedent's pain and suffering, Venerable's claim for pain and suffering from injury leading to death does not survive and will be dismissed.").

    Of course, an argument could be made that the settlement agreement should still be enforced even though the Estate was not present at the settlement conference to express its views on the § 1983 claim because, even if the Estate were prevail on the claim, in the end, it is Ricardo Escobedo's children, Justin and Devin, who would reap the benefits as the heirs, and the children's guardians ad litem were present at and participated in the settlement conference. While it may be true that the ultimate beneficiaries are Justin and Devin, the Court cannot gloss over the fact that the Estate was a proper party in this case and appears to have legal standing as a plaintiff (until found otherwise by the trial court). Yet the administrators -- the representatives of the Estate -- did not agree to the settlement on the Estate's behalf. Therefore the requisites of California Code of Civil Procedure § 664.6 were not satisfied. *See* Cal. Code Civ. P. § 664.6 (requiring for an enforceable settlement either that the parties to the settlement stipulate to such in writing outside the presence of the court or stipulate to such orally before the court).

    At the hearing, Defendants stated that, even without dismissal of the Estate as part of this settlement, they want to enforce the settlement reached before Judge Zimmerman against the two minor children who were represented at the settlement conference and who agreed through their representatives to the settlement. In response to this Court's questions, Defendants disclaim that this

is an "all or nothing" settlement. Defendants agree to accept a partial settlement. As there was no express allocation of the $250,000 settlement sum as going to the Estate, by accepting settlement against only the two minors and obtain releases only from them and not the Estate, Defendants effectively disclaim any credit or set-off (with respect to the $250,000) against the Estate's claim. As acknowledged at the hearing, Defendants have assumed the risk of having to obtain resolution by way of settlement with or judgment against the Estate. Accordingly, the Court recommends that Defendants' motion to enforce the settlement with respect to the Estate be denied.

B. <u>Repudiation of Tentative Compromise of Minor's Claim</u>

As for the motion to enforce the settlement with respect to Devin, Devin argues that it should also be denied because, under *Scruton v. Korean Air Lines Co., Ltd.*, 39 Cal. App. 4th 1596 (1995), Ms. Gagey as Devin's guardian ad litem could repudiate the tentative compromise of a minor's claim before trial court endorsement. *See id.* at 1600 ("We hold, pursuant to section 372 [of the California Code of Civil Procedure], a guardian ad litem may repudiate a tentative compromise of a minor's claim before trial court endorsement. Once repudiated, the trial court may only unilaterally enforce the compromise after finding the guardian acted contrary to the minor's best interests.").

Defendants contend that Devin and the Estate misread *Scruton*, which "merely stands for the proposition that a guardian has no authority to enter into an agreement compromising the claims of his charge without the sanction of the court that appointed the guardian." Reply at 4 (emphasis omitted). According to Defendants, "Judge Zimmerman's participation in and orchestration of this settlement satisfies the legislative intent of court involvement and imprimatur on this settlement." *Id.* Defendants further argue California Code of Civil Procedure § 664.6 supports their position. The statute provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court *or orally before the court*, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." Cal. Code of Civ. Proc. § 644.6 (emphasis added). According to Defendants, the oral settlement agreement before Judge Zimmerman satisfies the requirements of § 664.6.

In *Scruton*, the guardian ad litem and defendant agreed to settle the minors' claims. The guardian ad litem, pursuant to § 372, filed petitions for approval of the compromise. *See Scruton*, 39

United States District Court
For the Northern District of California

1   Cal. App. 4th at 1600.  However, before the hearing on the petitions, the guardian obtained new

2   information which affected the propriety of the settlement.  The guardian withdrew the petitions,

3   thus causing the defendant to file a motion to enforce the settlement agreement.  *See id.* at 1600-01.

4         The court, relying on a Ninth Circuit case, *Dacanay v. Mendoza*, 573 F.2d 1075 (9th Cir.

5   1978), held that the guardian was entitled to repudiate the settlement: "'[S]ince the enforceability of

6   a contract in settlement of litigation involving a minor party depends upon the approval of a

7   court, . . . such a contract is voidable at the election of the minor through his guardian ad litem

8   unless and until the court's imprimatur has been placed on it.'" *Id.* at 1606 (quoting *Dacanay*, 573

9   F.2d at 1080)).

10        Defendants argue that Judge Zimmerman's involvement in the settlement constituted the

11  Court's imprimatur, thus rendering Devin's repudiation untimely and ineffective.  However, even

12  though Judge Zimmerman is a judicial officer and presided over a Court-ordered settlement

13  conference, his role in the settlement conference was not that of a judicial officer approving the

14  substance of the settlement but rather that of a mediator facilitating the parties' voluntary agreement.

15  Moreover, the language used by the court in *Scruton* suggests that the court imprimatur needed is

16  that of the trial court.  *See id.* at 1606 ("A guardian has no authority to enter into an agreement

17  compromising the claims of his charge without the sanction of the court *that appointed the*

18  *guardian*. . . . [W]ithout *trial court* approval of the proposed compromise of the ward's claim, the

19  settlement cannot be valid.") (emphasis added).  Indeed, it is not at all clear that a magistrate judge

20  can approve a compromise as a potentially dispositive matter under 28 U.S.C. § 636(b).  Notably,

21  even Judge Zimmerman said during the settlement conference that the petition to compromise the

22  minors' claims would have to go to Judge Jenkins for approval.  Defendants did not contest this

23  statement at the time.

24        Finally, contrary to Defendants' argument, § 664.6 does not resolve this case in their favor.

25  In *Scruton*, the court specifically stated that, "[w]hile section 664.6 generally deals with the court's

26  power to enforce a settlement, section 372 is a special statute dealing with the power of guardians to

27  compromise on behalf of minors.  As such, the provisions of section 372 will control in litigation, as

28  here, in which one of the parties is a minor."  *Id.* at 1607.

Defendants maintain that the *Scruton* court's comment that § 372 governs and not § 664.6 "is pure *dicta*" because the court held that the requirements of § 664.6 were not satisfied in the case before it – *i.e.*, there was no evidence that there was either a settlement agreement signed by the parties outside the presence of the court or an oral settlement agreement before the court. Reply at 4. This argument is not convincing. The discussion of § 664.6 by the *Scruton* court should be considered in its entirety:

> Nor may [the defendant] or the trial court enforce the settlement under section 664.6 . . . . It is a maxim of statutory construction that a specific provision will control over a general statute. While section 664.6 generally deals with the court's power to enforce a settlement, section 372 is a special statute dealing with the power of guardians to compromise on behalf of minors. As such, the provisions of section 372 will control in litigation, as here, in which one of the parties is a minor. *Additionally*, at the time of the court's approval of the compromise here, section 664.6 provided, "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, . . . the court, upon motion, may enter judgment pursuant to the terms of the settlement." The record here does not contain a settlement agreement "signed by the parties outside the presence of the court," and there was no oral stipulation before the court because [the guardian ad litem's] attorney rejected the agreement and withdrew the petitions. Hence, on the record before us, the requirements of section 664.6 were never satisfied.

*Id*. at 1607 (emphasis added). The key here is the word "additionally." That is, the *Scruton* court concluded that § 664.6 was not controlling in the case for *two independent reasons*: (1) because § 372 as a more specific statute was controlling and (2) because, in any event, the requirements of § 664.6 had not been met.

The Court therefore agrees with Devin that, under *Scruton*, Ms. Gagey, as his guardian ad litem, was entitled to repudiate the tentative compromise of Devin's claim before the trial court's approval of the minor's compromise. Because Judge Jenkins never approved the compromise, Ms. Gagey's repudiation was timely.

This does not end the inquiry, however, because in *Scruton*, the court held that, in spite of a repudiation, a trial court may still "enforce the compromise after finding the guardian acted contrary to the minor's best interests." *Id*. at 1600. The court elaborated: "[W]hen the guardian repudiates the settlement, . . . , '. . . the decision of the guardian deserves some deference. Consequently, . . .

10

the court has limited power to direct a settlement unilaterally, *but to do so, the court must first find that the guardian ad litem has acted arbitrarily and capriciously in the sense that his conduct is inimical to the best interests of the court's ward.*'" *Id.* at 1607-08 (emphasis in original; quoting *Dacanay*, 573 F.2d at 1080).

Unfortunately, neither *Scruton* nor *Dacanay* provide much guidance in how to apply the above standard. Devin contends, of course, that the standard is very deferential to the guardian. However, the standard only states that the guardian is entitled to "some" deference. Furthermore, even though the terms "arbitrarily" and "capriciously" are used in the standard, they are notably modified by the phrase "in the sense that [the guardian's] conduct is inimical to the best interests of the [minor]." *Scruton*, 39 Cal. App. 4th at 1607-08. The standard is reiterated in similar terms later in the *Scruton* opinion -- *e.g.*, "contrary to the minor's best interests," *id.* at 1600, and "adverse to the best interests of the minor[]." *Id.* at 1608.

Given that this standard focuses on whether a repudiation is inimical, contrary, or adverse to the best interests of a minor, it is not clear how the standard is substantively different from the standard that a trial court must apply in deciding whether to approve a minor's compromise -- *i.e.*, whether the settlement is in the best interests of the minor. As best as this Court can discern, the difference is twofold. First, "some" deference must be given to the guardian's repudiation. Second, the burden of proof should be reversed. That is, the Court starts with the presumption that the repudiation is valid; the burden rests with Defendants as the party seeking to enforce the settlement to show that the repudiation is inimical, contrary, or adverse to Devin's best interests.

The Court concludes that Defendants have satisfied the burden of showing that the repudiation was inimical, contrary, or adverse to Devin's best interests. At the settlement conference, Devin was represented by experienced counsel who had evaluated both the strengths and weaknesses of the case against Defendants. That evaluation showed that this was a complicated case with many challenges and pitfalls, both factual and legal. The problems with Plaintiffs' case included the fact that the coroner determined that the manner of Ricardo Escobedo's death was unknown, *see* Docket No. 77 (Daar Decl. ¶ 5), and that among the causes of death were methamphetamine intoxication and a pre-existing enlarged heart (*i.e.*, not just use of force by the

police officers). *See id.* (Daar Decl. ¶ 5). To the extent that the coroner also listed excited delirium as a cause of death, it is a controversial theory, with some experts supporting the theory and others rejecting it; the validity of the theory is being litigated in numerous courts. *See id.* (Daar Decl. ¶¶ 7, 10). Moreover, Plaintiffs were unable to allege specific actions attributable to specific police officers (Plaintiffs sued a total of eight different officers), a point that Defendants emphasized and that compelled Plaintiffs to "litigate complex issues of group liability in defending against summary judgment." *Id.* (Daar Decl. ¶ 12).

Other problems with Plaintiffs' case included Ricardo Escobedo's troubled past, one that included strained relationships with his children and their mothers. *See id.* (Daar Decl. ¶ 12). Moreover, Defendants assert Escobedo was delinquent in his child support payments. *See* Mot. at 11. Notably, the incident in the case at bar was triggered when Ms. Guidici made a 911 call and told the police officers who responded that Mr. Escobedo was causing a disturbance and wanted him removed from her home. *See* MJJ Order of 1/28/05, at 1-2. In their motion, Defendants identify other problematic evidence, including an incident in which Ricardo Escobedo allegedly physically abused Ms. Guidici in front of Justin (slamming her against a dresser, slapping her face, and causing a cut to her wrist) and an incident in which Ricardo Escobedo allegedly drove while intoxicated with Justin in the car. *See* Mot. at 11-12. These facts could substantially diminish the damages awarded for wrongful death even if Plaintiffs prevailed on liability.

Taking into account all of the above, Plaintiffs' case against Defendants was far from being "a sure thing." There were significant barriers to establishing liability as well as damages. Thus, Defendants have satisfied the burden of showing that the repudiation was inimical, contrary, or adverse to Devin's best interests. The Court notes that the other minor, Justin, through his guardian ad litem, has agreed to the settlement and continues to support the petition for approval of minor's compromise. Both minors would receive equivalent consideration under the settlement.

As to the deference to be given to the guardian's decision to repudiate, the Court examines the reason given for the repudiation. Here, the Court takes note that the basis for the repudiation as identified by Devin is his desire, as expressed in a letter and declaration, to go to trial and see justice done. The basis is not grounded in an objective assessment of the strengths and weaknesses of the

case and the settlement value of the case. Devin points to no new fact, evidence or legal issue not adequately considered in reaching the settlement. His opposition is instead based on emotion. While Devin's feelings are certainly understandable, they do not shed any light as to why the settlement was objectively unfair or unreasonable. The repudiation in this case contrasts with that in *Scruton* and *Dacanay*, in which there were specific reasons why the settlement was inadvisable. More specifically, there was new evidence or intervening developments indicating that the settlement was undervalued. *See Scruton*, 39 Cal. App. 4th at 1601 (noting that guardian sought to repudiate minor's compromise after, *inter alia*, learning of a jury verdict in a similar case which exceeded the proposed settlement); *Dacanay*, 573 F.2d at 1077 (noting that guardian changed his mind about settlement agreement after learning that the minor's injuries were much more serious than initially diagnosed and that the car that had hit the minor had been traveling at a greater speed than originally thought). In each case, there was some objective basis for the repudiation.

        To be sure, Devin and his guardian both state that Devin had not been consulted prior to Ms. Gagey's approval of the settlement. This is troubling. However, this does not render the repudiation effective per se. The law requires an appointment of a guardian ad litem because it presumes the minor is not competent to make such decisions; it vests complete control in the guardian subject to judicial oversight to ensure that any disposition by way of compromise is fair to the minor and in his or her best interests. A minor's contrary wishes cannot serve as a veto to a guardian's decision, less the role of the guardian be considered nugatory. On the other hand, the wishes of the minor, while not controlling, should be considered, particularly when the minor approaches majority. Here, Devin was sixteen years old at the relevant time. But the Court has fully considered Devin's views and reason for opposing the compromise and has found repudiation would be contrary to his best interests.

        Accordingly, because repudiation of the compromise would be adverse to Devin's best interests, the Court recommends that the motion to enforce the settlement, as to Devin and Justin, be granted.

### III.   CONCLUSION

For the foregoing reasons, the Court recommends that Defendants' motion to enforce the settlement be granted with respect to Devin (and Justin who did not contest the settlement) but denied with respect to the Estate.

Any party may file objections to this report and recommendation with the district judge within ten days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

Dated:  September 30, 2005

EDWARD M. CHEN
United States Magistrate Judge

14