IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF RICARDO ESCOBEDO *et al.*, | No. C03-03204 MJJ |
| Plaintiff, | **ORDER RE: MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |
| v. | |
| CITY OF REDWOOD CITY *et al.*, | |
| Defendant. | |

## I. BACKGROUND

On September 30, 2005, United States Magistrate Judge Edward M. Chen issued a "Report and Recommendation Re: Defendants' Motion to Enforce Settlement" (Doc. #118) ("R&R.") Pending before the Court are Plaintiffs the Estate of Ricardo Escobedo and Devin Escobedo's and Defendants City of Redwood City and the individual police officers' objections to the Report and Recommendation. For the following reasons, the Court affirms Magistrate Judge Chen's findings.

Plaintiffs are the Estate of Ricardo Escobedo and the two minor children of Ricardo Escobedo ("Mr. Escobedo"), Justin and Devin. Plaintiffs filed suit against Defendants City of Redwood City and eight individual police officers, alleging that the officers' use of force led to the death of Mr. Escobedo. On January 31, 2005, the parties reached a settlement and put it on the record. The Estate and Devin subsequently contested the settlement; Justin did not. As a result, Defendants filed a Motion to Enforce Settlement.

The Court referred the Motion to Magistrate Judge Chen for consideration. Magistrate Judge

1 Chen recommended the Court grant Defendant's Motion to Enforce Settlement with respect to Devin
2 but deny the Motion with respect to the Estate. In compliance with 28.U.S.C. 636(b)(1)(B) the parties
3 each filed objections to the R&R.

4 On January 28, 2005, this Court issued an order granting in part and denying in part Defendant's
5 Motion for Summary Judgement. (Doc. #68.) The Order left for trial the § 1983 claims for excessive
6 force against the individual police officers, for deprivation of familial relationship against all
7 Defendants, and for wrongful death against all Defendants. Thereafter, the Court referred the parties
8 to Magistrate Judge Zimmerman for a settlement conference.

9 Judge Zimmerman held the settlement conference on January 31, 2005. (Doc. #69.) The Estate's
10 administrators, Mr. Escobedo's brothers, Antonio and Robert Escobedo, did not attend the settlement
11 conference. However, Mr. Escobedo's other brother, Rudy Escobedo attended the conference, although
12 he had no authority to bind the Estate. Justin and Devin's mothers, Denise Guidici and Tracy Gagey,
13 respectively, represented their children. All parties were represented by counsel at the conference.

14 The parties reached a settlement and put it on the record. Judge Zimmerman specifically asked
15 all participants if they were generally satisfied with the agreement. (Doc. #101-3) (Tr at 15, 16.) All
16 answered in the affirmative, with the exception of Rudy Escobedo, who could not bind the estate. *Id.*
17 Judge Zimmerman also stated several times on the record that the settlement with respect to the two
18 minor children was "going to have to ultimately be approved by Judge Jenkins with a Petition to
19 Approve a Minor's Compromise." (Tr. at 5, 12.)

20 The City Council for the City of Redwood City subsequently approved the settlement on
21 February 7, 2005. In early March, Ms. Guidici and Ms. Gagey each signed a general and special release
22 of Devin and Justin's claims. (Doc. #101- 4.) However, the Estate's administrators refused to sign the
23 agreement. (Doc. #74.) At this time, Plaintiffs' counsel advised the Estate to find new counsel. *See*
24 *Id.*

25 On March 22, 2005, Ms. Gagey and Ms. Guidici filed a Petition to Compromise Minor's Claims
26 (Doc. #75.) This Court referred the Petition to Magistrate Judge Zimmerman. (Doc. #80.) Before
27 Judge Zimmerman considered the Petition, Ms. Gagey filed an Opposition to Proposed Settlement.
28 (Doc. #84, #85.) In her opposition, Ms. Gagey acknowledged she had initially agreed to the settlement

2

reached on January 31, 2005, but was "no longer comfortable agreeing to the settlement." (Doc. #84.) Particularly, Ms. Gagey stated that she "did not discuss the proposed settlement with [Devin] prior to [her] agreeing to the settlement." *Id.* She further indicated that Devin did not want to settle. *Id.* Rather, she explained that Devin, "wants justice for his father which would be a jury trial and [he] was not interested in settling for monetary damages." *Id.*

In a subsequent Declaration, Ms. Gagey further stated that she felt pressured by Judge Zimmerman and the attorneys to settle the case at the settlement conference and believed that she had, "no choice but to accept the settlement." (Doc. #96.)

In a letter attached to the Opposition, Devin confirmed he did not want to proceed with the settlement stating:

> I feel that what the 8 cops did was wrong and there needs to be something done about it . . . I don't think it is right to kill someone then not even apologize and say here's $70,000 [Devin's portion of the $250,000 settlement] for your trouble. That is just not right. I think that the cops should never be able to work as a cop again. In other states if a cop slams a guy down on the ground then that guy can sue and get $1.5 million for a bruise and the cops do get prosecuted. I feel that the cops need to be put to justice and should pay a lot more. I think that its not right that people can just cover up something this bad and get away with it. . .

(Doc. 85.)

On April 13, 2005, the Estate administrators submitted a response to Judge Zimmerman's order requiring them to explain why they did not sign the settlement agreement. The administrators stated, "[f]or us this case is not about money, but about seeing some sort of justice done. Since no criminal charges were filed, the civil case was our only outlet." (Doc. #101 - 8) (Estate Letter to J. Zimmerman.) The administrators also stated they were not notified of the settlement conference held before Judge Zimmerman. In response, the Estate's attorneys stated to Judge Zimmerman that they informed both Ms. Gagey and Ms. Guidici of the settlement conference and made the mistake of presuming the mothers were in contact with the family and the Estate.

On May 4, 2005, Judge Zimmerman held a hearing on the Petition for Compromise to Minor's Claims[1]. (Doc. 101 - 7) (Transcript of 5/4/05 hearing.) However, Judge Zimmerman declined to rule on the Petition until the enforceability of the settlement was determined. (Tr. at 11.) Further, Judge

---

[1] By this time, Devin and the Estate were represented by new counsel.

3

Zimmerman expressed concern about certain aspects of the settlement conference held in January. First, Judge Zimmerman wondered why the wrong Escobedo brother had attended the conference, particularly given the fact that he could not bind the estate. Second, Judge Zimmerman questioned Ms. Gagey's role as guardian due to the declarations that she approved a settlement without consulting with Devin. However, at the hearing, counsel for the Estate and Devin stated that Ms. Gagey wanted to continue as guardian, and counsel would make sure Ms. Gagey consulted with Devin. (Tr. at 13.)  Moreover, defense counsel stated that he believed all parties would stipulate that Ms. Gagey is the proper guardian. (Tr. 14 and 15.)  In response, Judge Zimmerman stated that "if the settlement is enforced, in my mind that will resolve all the questions about whether my settlement order which required certain people to be present with certain authority was honored." (Tr. at 18.)  The parties also stipulated that the lack of a ruling on the Petition for Compromise to Minor's Claims would not be raised as a procedural bar to a decision on whether or not to enforce the settlement. (Tr. at 24, 25.)

Subsequently, Defendants filed a Motion to Enforce Settlement on June 17, 2005. (Doc. #101.) Plaintiffs filed their opposition on July 12, 2005. (Doc. #107.)

On September 30, 2005, Magistrate Judge Chen issued a Report and Recommendation Re: Defendants' Motion to Enforce Settlement.  Judge Chen recommended the Court grant the Defendants' Motion to Enforce the Settlement with respect to Devin but deny the Motion with respect to the Estate. Both the Plaintiffs and Defendants have filed objections to the R&R, which are now pending before the Court.

## II. LEGAL STANDARD

A district court judge may "designate a magistrate to conduct hearings, including  evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition." 28 U.S.C. § 636 (b)(1)(B) (2005).  Within ten days of being served with a copy of the magistrate judge's proposed findings and recommendations, any party may serve and file written objections as provided by the rules of court. 28 U.S.C. § 636 (b)(1)(C).  A district court judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made. 28 U.S.C. § 636 (b)(1); *Bhan v. NME Hospitals, Inc.* 929 F.2d 1404, 1414 (9th Cir. 1991). The district court judge may accept, reject, or modify, in whole

4

or in part the magistrate judge's findings and recommendations. Federal Rule of Civil Procedure 72(b) is akin to 28 U.S.C. § 636(b)(1)(C), and requires the district judge to whom the case is assigned to make a de novo determination of those portions of the report, findings, or recommendations to which timely objection is made.

Concurrently, Civil Local Rule 72-3 states that any objection filed pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1)(B) must be accompanied by a motion for de novo determination, specifically identifying the portions of the magistrate judge's findings, recommendation, or report to which objection is made and the reasons and authority supporting the objection. At the time a party files an objection or response, the party may make a motion for expansion or addition to the record of the proceedings before the magistrate judge or for an evidentiary hearing. Civil Local Rule 72-3(b).

When deciding whether to expand the record, a district court has discretion to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation. *United States v. Howell*, 231 F. 3d 615, 621 (9th Cir. 2000), *cert. denied*, 534 U.S. 831 (2001). While Congress clearly indicates that district courts are required to make de novo determinations upon objections, the court has discretion whether to receive further evidence. *Id.* at 622.

### III. DISCUSSION AND ANALYSIS

**A. Discussion**

**1. Judge Chen's Report and Recommendation**

In reaching his decision, Judge Chen initially addressed Judge Zimmerman's concerns about the parties who attended the settlement conference and their authority (or lack thereof) to enter into a binding agreement. First, Magistrate Judge stated he would not address *sua sponte* Ms. Gagey's status as *guardian ad litem*, or her ability to act as such, because none of the parties contested this point.

Next, with respect to the Estate's administrators, Judge Chen addressed whether their absence from the settlement conference was a basis for denying enforcement of the settlement. Because a § 1983 claim survives the death of the decedent, Judge Chen found that although the Estate was a proper party in the case, with legal standing as a plaintiff, the administrators did not agree to a settlement on the Estate's behalf. Consequently, Judge Chen held that the requisites of Cal. Code of Civil Procedure §

5

1  664.6 were not satisfied[2], and the settlement was not enforceable against the Estate.[3]

2  In response to Defendants' Motion, Devin argued that, as his *guardian ad litem*, Ms. Gagey
3  could repudiate the tentative compromise of his claim before the court endorsed it, and cited *Scruton*
4  *v. Korean Air Lines,* 39 Cal. App. 4th 1596, 46 Cal. Rptr. 2d 638 (1995), in support. Defendants,
5  however, maintained that *Scruton* merely held that a guardian has no authority to enter into an
6  agreement compromising a minor's claims without the approval of the court that appointed the guardian.
7  According to Defendants, Judge Zimmerman's involvement in the settlement conference satisfied this
8  requirement. Additionally, Defendants advance that Cal. Code of Civil Procedure § 664.4 supported
9  enforcement of their Motion. Specifically, they proffered that the oral settlement argument before Judge
10 Zimmerman fulfilled the requirements of § 664.4. Thus, they argued that Ms. Gagey's attempted
11 repudiation of the settlement was untimely and ineffective.

12 Judge Chen, however, disagreed. Particularly, he found that, "even though Judge Zimmerman
13 is a judicial officer and presided over a court-ordered settlement conference, his role in the settlement
14 conference was not that of a judicial officer approving the substance of the settlement but rather that of
15 a mediator facilitating the parties's voluntary agreements." (R&R at 9:12-14.) Judge Chen also noticed
16 that *Scruton* suggests that the trial court, as the court that appointed the *guardian ad litem*, needed to
17 approve the agreement, and that a magistrate judge likely lacked the authority to approve a compromise
18 of a potentially dispositive matter under 28 U.S.C. § 636(b).

19 Further, Judge Chen rejected Defendants' argument that § 664.6 controlled. Citing *Scruton*,
20 Judge Chen found that because § 372 dealt specifically with a guardian's authority to compromse on
21 behalf of a minor, it, rather than § 664.6, controlled.

22 Based on the foregoing, Judge Chen held: "[U]nder *Scruton*, Ms. Gagey, as [Devin's] *guardian*
23 *ad litem*, was entitled to repudiate the tentative compromise of Devin's claim before the trial court's
24 approval of the Minor's Compromise. Because Judge Jenkins never approved the Compromise, Ms.

---

[2] California Code of Civil Procedure § 664.4 reads in part: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. . ."

[3] The R&R also indicates that, at the hearing, Defendants stated that, "even with dismissal of the Estate as part of this settlement, they want[ed] to enforce the settlement . . . against the two minor children who were represented at the settlement conference and who agree through their representatives to the settlement."

6

Gagey repudiation was timely."[4]

Having determined that Ms. Gagey was entitled to repudiate the tentative compromise, Judge Chen then addressed whether the court should nonetheless enforce the compromise because Ms. Gagey's decision was contrary to Devin's best interests. In engaging in this analysis, Judge Chen noted that: 1) 'some' deference must be given to the guardian's repudiation and 2) as the party seeking to enforce the settlement, Defendants bore the burden of proof. Applying this standard, Judge Chen found that Defendants sufficiently demonstrated that Ms. Gagey's repudiation was inimical, contrary and adverse to Devin's best interest.

In particular, Judge Chen noted that Devin was represented by experienced counsel at the settlement hearing who assessed the strengths of Devin's case, and Plaintiffs faced significant evidentiary obstacles to establishing liability and damages. Judge Chen also considered Mr. Gagey's justification for the repudiation, namely, Devin's desire to go to trial and bring Defendants to "justice." While noting that these concerns were understandable, Judge Chen found that they did not weigh on whether the settlement was objectively unfair or unreasonable. Judge Chen also acknowledged that it was undisputed Devin had not been consulted before Ms. Gagey approved the settlement. Although Judge Chen found this fact "troubling," he nevertheless concluded that it "does not render the repudiation effective *per se.*" Even considering Devin's wishes, and giving due deference to Ms. Gagey's decision, Judge Chen concluded the repudiation of the compromise was contrary to Devin's best interests. Judge Chen therefore recommends that the Court grant Defendants' Motion to Enforce Settlement as to Devin.

**2. Defendants' Objections to Report and Recommendation**

Following Judge Chen's R&R, the parties each timely filed their objections. In their Objection, Defendants raised the following challenges to the R&R:

1) Defendants object to Judge Chen's finding that the settlement did not represent a final and full settlement of the entire action by all parties against all parties.

2) Defendants object to Judge Chen's finding that the settlement is not enforceable under Cal.

---

[4] In reaching this conclusion, Judge Chen rejected Defendants' argument that the *Scruton* Court's discussion of § 372 was merely dicta.

7

1  Code of Civil Procedure § 664.4 and his interpretation of *Scruton v. Korean Air Lines,* 39 Cal. App. 4th
2  1596, 46 Cal. Rptr. 2d 638 (1995).
3        3) Defendants object to Judge Chen's finding at page 10, lines 22-24, that Ms. Gagey's
4  repudiation was timely because the Court had not approved the Petition for Compromise to Minor's
5  Claims.
6        4) Defendants object to Judge Chen's conclusion that the settlement should not be enforced
7  against the Estate.

**3. Plaintiffs Objections to Report and Recommendation**

In their Objections, Plaintiffs oppose the R&R on the following grounds:

1) Plaintiffs object of the finding that the settlement should be enforced against Devin because Ms. Gagey was never appointed *guardian ad litem* and lacked the authority to settle on Devin's behalf.

2) The Plaintiffs object that even if Ms. Gagey had been a duly-appointed *guardian ad litem*, she exceeded her authority by agreeing to the settlement without consulting with Devin.

3) Plaintiffs argue Defendants have no standing to enforce the settlement agreement under the applicable law, Cal. Code of Civil Procedure § 372.

4) Plaintiffs proffer the Magistrate's report should consider the evidence supporting repudiation, not just the Defendants' contentions supporting settlement when evaluating Ms. Gagey's repudiation. Accordingly, Plaintiffs request the evidence supporting repudiation become part of the record in connection with Defendants' Motion to Enforce Settlement.

5) Plaintiffs object to the Defendants' Objections to Magistrate Judge's Report and Recommendation because they failed to specifically request de novo review according to Local Civil Rule 73-2.[5]

**B.  Analysis**

**1. Under FRCP 17(c) Ms. Gagey Maintained Proper Authority To Act As *Guardian ad litem*.**

Plaintiffs first object to the R&R because Judge Chen did not *sua sponte* address whether the Court had appointed Ms. Gagey as Devin's *guardian ad litem.* In the R&R, Judge Chen indicated he

---

[5] Although the local rule specifies the party must request de novo review, the district judge must make a de novo review of timely and specific objections according to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1)(B). A failure to make an objection within 10 days forfeits the right to challenge. Defendants filed a timely objection.

8

would not address *sua sponte* Ms. Gagey's status as *guardian ad litem*, or her ability to act as such, because none of the parties contested this point. According to Plaintiffs because Ms. Gagey had not been appointed *guardian ad litem*, the settlement is unenforceable.

Plaintiffs assert state law controls because the capacity of an individual to sue is determined by the law of the forum state. Fed. R. Civ. P. 17(b). Thus, in support, Plaintiffs cite Cal. Code of Civil Procedure § 372 and § 373. Section 372 provides in part:

> When a minor, an incompetent person, or a person for whom a conservative has been appointed is a party, that party shall appear either *by a guardian or conservator of the estate or by a guardian ad litem appointed by the court* in which the action or proceeding is pending, or by a judge thereof...

Cal. Civ. Proc. § 372(a) (emphasis added). Further, § 373 prescribes the appointment process for guardians ad litem, and provides that: "[I]f the minor is the plaintiff the appointment must be made before the summons is issued, upon the application of the minor, if the minor is of the age of 14 years, . . ." Cal. Civ. Proc. § 373(a).

Plaintiffs argue that these statutes require a minor to be represented by a *guardian ad litem* in any pending litigation or court action. *See Hughes v. Quackenbush,* 1 Cal. App. 2d 349, 362 (1934)("It's elementary that, when a minor is a party to an action, he must appear either by his general guardian or by a *guardian ad litem* appointed by the court for that purpose.") (citing section 372), *Siegal v. Superior Court,* 203 Cal. App. 2d 22, 27 (1962). (A court "has no authority to disregard the statutory requirement [of section 372] that a minor must appear by a general guardian or *guardian ad litem*.")[6] Plaintiffs further argue that if a court does not appoint a *guardian ad litem* for a party who is a minor, the court's actions affecting the minor exceed the court's jurisdiction and provide the minor with the absolute right to void the settlement upon reaching majority. *See, White v. Renck,* 108 Cal. App. 3d 835, 840 (1980), citing *Abelleira v. District Court of Appeal,* 17 Cal. 2d 280, 288 (1941); *Keane v. Penha,* 76 Cal. App. 2d 693, 696 (1946).

---

[6]Originally the statute provided for an appearance by a general guardian, and if no general guardian existed, a guardian appointed by the court. The 1963 amendment changed "general guardian" to "guardian of the estate." Later "guardian of the estate" became "guardian or conservator of the estate."

9

In this case, Ms. Gagey acted as *guardian ad litem* for Devin throughout the court proceedings.[7] However, the R&R acknowledges uncertainty surrounding Ms. Gagey's appointment as *guardian ad litem*. (*See* Doc. #118) ("R&R.") Judge Chen did not discuss *sua sponte* Ms. Gagey's status as *guardian ad litem*, or her ability to act as such because none of the parties contested this point. Plaintiff stated that "The Magistrate Judge assumed that Plaintiffs were aware of this critical omission and chose not to object that Ms. Gagey lacked authority to settle the case. (Doc. #120) (Plaintiffs' Opposition to Magistrate's Report at 4:1-2.) Now, Plaintiffs raise the issue for the first time because Plaintiffs discovered Ms. Gagey, in fact, had not been appointed as Devin's *guardian ad litem* as prescribed by California law.

While Plaintiffs are correct that Federal Rule 17(b) incorporates state law to determine capacity to sue, the Court disagrees with Plaintiffs that state law governs the appointment process. The actual appointment process of *guardians ad litem* remains procedural, and therefore, state rules do not apply to cases brought in federal courts. *Gibbs v. Carnival Cruise Lines,* 314 F.3d 125, 134-35 (3rd Cir. 2002), *M.S. v. Wermers*, 557 F.2d 170, 174 n.4 (8th Cir. 1977); 6A Charles Alan Wright & Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1571, at 511-12 (1991); *see generally Hanna v. Plumer,* 380 U.S. 460, 471-72, 85 S.Ct. 1136, 14 L.Ed. 2d. 8 (1965) (federal courts apply on-point Federal Rules of Civil Procedure instead of state procedural practices.)

For instance, when a complaint named a parent *guardian ad litem*, the district court in *Gibbs* found no reason existed for the court to deny the appointment. *Gibbs* at 129. Specifically, the *Gibbs* Court indicated that, "The court should take into account all factors relevant to the protection of the minor's interests when selecting a *guardian ad litem*, but need not look to the procedures specified by state law." *Id.*

Under Rule 17 of the Federal Rules, the appointment of a legal representative requires a two part analysis. First, Rule 17(b) designates that state law determines an individual's *capacity* to sue. (emphasis added.) Accordingly, Cal. Code of Civil Procedure § 372 remains relevant to this inquiry. Second, Rule 17(c) deals specifically with minors, and a district court's ability to appoint a *guardian*

---

[7] By its language, California Code of Civil Procedure § 372 provides three options for minors – they may appear by a guardian, conservator of estate or *guardian ad litem*. Guardianship is a legal process and nothing in the record indicates Ms. Gagey, Devin's mother and natural guardian, has a formal court appointment as legal guardian.

10

*ad litem*. Rule 17(c) provides:

> Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a *duly appointed representative* may sue by a next friend or *guardian ad litem*. The *court shall appoint* a *guardian ad litem* for an infant or incompetent person not otherwise represented in an action or shall make such other order as it seems proper for the protection of the infant or incompetent person.

Fed. R. Civ. P. 17(c) (emphasis added.)

Therefore, pursuant to Rule 17, a federal court must determine if the minor has a duly appointed representative who has the capacity to sue on behalf of the minor under applicable state law. Fed. R. Civ. P. 17(b), *See Gibbs* at 135 (citing *McSparran v. Weist*, 402 F.2d 867, 869 (3rd Cir. 1968)). Here, Plaintiffs allege that no one was duly appointed to sue on Devin's behalf.[8] Thus, under Rule 17(c) a federal court has the ability to appoint a *guardian ad litem* for Devin because he was "not otherwise represented." As indicated above, the district court does not need to rely on state law when determining what procedures and factors to use when appointing a *guardian ad litem*. *Gibbs* at 135. The main consideration for the district court is the protection of the minor's interest. *United States v. 30.64 Acres of Land*, 795 F.2d 796, 804, 805 (9th Cir. 1986); *Garrick v. Weaver*, 888 F.2d 687, 693 (10th Cir. 1989); *Noe v. True*, 507 F.2d 9, 11-12 (6th Cir. 1974). In fact, this is consistent with California law where protecting the child's best interest also remains a paramount concern in selecting a guardians ad litem under Cal. Code of Civil Procedure § 372 and § 373. *Briggs v. Briggs*, 160 Cal. App. 2d 312; 325 P.2d 219 (1958).

Here, Plaintiffs assert Devin had no legal representation according to state law, but ignore the second part of the analysis. Pursuant to Rule 17(c), the Court shall appoint a *guardian ad litem* for an unrepresented minor. The original complaint filed before the district court named Ms. Gagey *guardian ad litem*. No conflicts of interest appeared to be present. For instance, Ms. Gagey had no independent stake in the claim, and the Estate named Devin and Justin as the sole beneficiaries. The parties raised no concerns or issues relating to Ms. Gagey's ability to adequately represent her son's best interests.

---

[8]In California a simple minute order suffices to evidence the appointment of a *guardian ad litem*, but the failure of the judge to sign or enter in the minutes the approval renders the appointment void. *See Foley v. N. Calif. Power Co.,* 130 P. 1183, 1184 (Cal. 1913); *Briggs v. Briggs,* 325 P.2d 219, 223 (2nd Cir. 1958).

11

United States District Court
For the Northern District of California

1 Furthermore, the Court's discretion allowed for the appointment of a different guardian if any doubts
2 exist regarding the *guardian ad litem*'s intentions or qualifications.

3 Additionally, neither Plaintiffs nor Defendants raised any objections to Ms. Gagey's role as
4 *guardian ad litem* throughout the proceedings. Even at the May 4, 2005, hearing in front of Judge
5 Zimmerman, and after Ms. Gagey's June 17, 2005, declaration, Plaintiffs' counsel did not object to her
6 role as *guardian ad litem*.[9] To the contrary, Plaintiffs' counsel stated that Ms. Gagey wanted to continue
7 as guardian, and Plaintiffs' counsel indicated Devin would be kept informed in the future. (*See* Doc. 101
8 - 7) (Transcript of 5/4/05 hearing.) Also at the May 4, 2005, hearing Defendants' counsel stated that
9 he believed the parties would stipulate to Ms. Gagey being the appropriate guardian because mothers
10 typically represent the best interests of their children. *Id.* at 14-15.

11 Nevertheless, Plaintiffs cite *Eagan by Keith v. Jackson,* 855 F.Supp. 765 (E.D.Pa. 1994), in a
12 Supplemental Brief as supporting their contention that state law applies and standing for the proposition
13 that under the Erie doctrine a state's procedural rule may nonetheless be substantive if "application of
14 the rule would have so important an effect upon the fortunes of one or both litigants that failure to
15 enforce it would be likely to cause a plaintiff to choose the federal court." *Id.* at 776, n. 14. However,
16 in *Eagan* a disabled plaintiff was represented by a *guardian ad litem* through an attorney who sought
17 to bypass the court's approval of the settlement under Federal Rule 17(c). The *Eagan* Court rejected
18 this broad reading of Rule 17(c) and stated, "the thrust of Rule 17 being the acquisition of a proper
19 representative for an incompetent." *Id.* at 775. Further, the *Eagan* Court held:

20 > Not applying the rules requiring Court oversight of the compromise of an incompetent's claim would trigger both prongs of the *Hanna* principal. An
21 > unscrupulous guardian would be prompted to bring an incompetent's claim in federal court, thereby evading the state court's judicial oversight of any
22 > settlement and depriving the incompetent of that protection.

23 *Id.* at 776.

24 The Court does not find its holding inconsistent with *Eagan*. *Eagan* is distinguishable because
25 in that case the court focused on whether the settlement required judicial oversight, not the issue before
26 this Court of whether the party received proper representation, the "thrust" of Federal Rule 17. Under

---

28 [9]Ms. Gagey's Declaration against Proposed Settlement stated she did not discuss the proposed settlement with Devin before agreeing to the settlement. Further, Ms. Gagey stated she learned her son did not want to settle so she no longer felt comfortable agreeing to the settlement. (Doc. #84) (Gagey Decl. filed 6/17/05.)

12

Rule 17(c), the Court maintains the authority to appoint a *guardian ad litem* or make such other orders as it deems proper to protect the child.

Alternatively, Plaintiffs also contend that under Federal Rule 17(c), Defendants' Motion to Enforce Settlement should be denied because a *guardian ad litem* would logically have to be appointed at the beginning of a lawsuit and "an appropriate duly appointed *guardian ad litem* would have been made aware of his/her rights and duties." (Doc. #139 at 4:13, 19.) However, the Court finds Plaintiffs' argument unavailing. Devin received representation through his mother, a natural guardian with no independent stake in the claim, and through experienced counsel from the inception of the litigation. Further, the Court agrees with Defendants that Plaintiffs' argument of what Ms. Gagey should know and do are problematic. For instance, her former attorney's are prevented from commenting on this issue due to the attorney client privilege. (Doc. #140 at 4.) Moreover, nothing in the record suggests that Ms. Gagey did not have her son's best interests in mind when entering into the settlement. As Defendants' submit "neither Devin nor his mother submitted a declaration that requests the Court to replace Ms. Gagey as Devin's guardian in this litigation." *Id.* at 3:1-2.

Based on the proceeding analysis, the Court finds Plaintiffs' objection based on Ms. Gagey's *guardian ad litem* status unpersuasive. While the Court looks to California law to determine capacity, Federal Rule of Civil Procedure 17(c) authorizes the Court to appoint a *guardian ad litem*. Further, despite Ms. Gagey's active participation in this matter on behalf of her son, none of the parties raised any challenges to her purported status as Devin's *guardian ad litem.* Rather, the parties acquiesced to her functioning in this capacity. Accordingly, the Court overrules Plaintiffs' objection based on Judge Chen's failure to *sua sponte* address Ms. Gagey's status as *guardian ad litem.*

### 2.  Ms. Gagey, a *Guardian Ad Litem*, Did Not Exceed Her Authority by Agreeing to the Settlement.

Second Plaintiffs argue that Ms. Gagey exceeded her authority as a *guardian ad litem* when she agreed to the settlement without first consulting Devin. (See Doc. #84, #85.) In support, Plaintiffs contend that *guardians ad litem* are officers of the court appointed to represent the best interests of the minor. See *Dacanay v. Mendoza*, 573 F.2d 1075, 1079-1080 (9th Cir. 1978); *Scruton v. Korean Air Lines,* 39 Cal. App. 4th 1596, 1603-1605 (1995); *County of Los Angeles v. Superior Court*, 91 Cal. App.

13

4th 1303, 1311 (2001). Plaintiffs also assert that a *guardian ad litem* lacks authority to bind a minor to a settlement without court approval under California law. *Scruton* at 1604, 1605, *Dacanay* at 1079, 1080.

The Court does not disagree with these propositions. However, the Court agrees with Judge Chen's finding that a minor's contrary wishes can not veto a guardian's decision, otherwise, the role of the guardian would be undermined. While the wishes of the minor, especially as the minor reaches majority should be considered, the law requires the appointment of a *guardian ad litem* because it presumes the minor is not competent to make legal decisions. Cal. Civ. Proc. § 372; *De Los Santos v. Superior Court*, 27 Cal. 3d 677, 683, 684 (1980.) Courts vest complete control in guardians to direct, manage and control litigation subject to judicial oversight that works as a further safeguard to protect the minor and makes sure any compromise is fair to the minor and in his or her best interest. Cal. Civ. Proc. § 372, *United States v. 30.64 Acres of Land, 795 F.2d 796, 804, 805 (9th Cir. 1986); Robinson v. Wilson*, 44 Cal. App. 3d 92, 99-107 (1974).

**3. The Settlement is Enforceable Against Devin.**

Both Plaintiffs and Defendants raise various objections to Judge Chen's recommendation that the Court grant Defendants' Motion to Enforce Settlement as to Devin. While Defendants agree with Judge Chen's ultimate recommendation, they object to Judge Chen's conclusions that the settlement is not enforceable under Cal. Code of Civil Procedure § 664.6, and that § 372 controls. Plaintiffs, in contrast, agree with Judge Chen's determination that § 664.6 is inapplicable. However, Plaintiffs contest Judge Chen's recommendation to enforce the settlement because Ms. Gagey acted contrary to Devin's best interests in repudiating the compromise. The Court turns to Defendants' argument first.

a. Enforceability of Settlement Pursuant Cal. Code of Civil Proc. § 664.6

In their opposition, Defendants contend that because the settlement in this matter occurred under and pursuant to court supervision, the parties orally stipulated to the settlement in court, and Ms. Gagey executed a release, the settlement is enforceable pursuant to § 664.6. This section provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter

14

1   judgment pursuant to the terms of the settlement." Cal. Code of Civ. Proc. § 664.4.

2   While the Defendants endorse Judge Chen's recommendation to enforce the settlement as to
3   Devin, the Defendants ask the Court to reconsider Judge Chen's reading of *Scruton* and the applicability
4   of section 664.6. Defendants assert that § 372 merely stands for the proposition that "the court in which
5   the action is pending needs to be involved before any release or discharge of a minor's claim is final."[10]
6   (Doc. #119) (Def. Obj. at 3:22-23.)  Accordingly, Defendants claim Magistrate Zimmerman's
7   participation in and orchestration of the settlement negotiations and agreement satisfy the requirements
8   of § 372. *Id.* at 4. Therefore, Defendants insist § 664.6 controls. In his R&R, Judge Chen rejected
9   Defendant's argument, finding that § 372, which deals specifically with the power of guardians to
10  compromise on behalf of minors, controls over the more generalized § 664.6. In reaching this decision,
11  Judge Chen evaluated Defendants' argument that the California Court of Appeal's language in *Scruton,*
12  that § 372 governed a guardian's repudiation of a minor's compromise, was merely dicta. As Judge
13  Chen explained, the *Scruton's* Court decision that § 664.6 did not control rested on two basis: 1) because
14  § 372, as a more specific statute, was controlling, and 2) because the defendants failed to show that the
15  requirements of § 664.6 had been satisfied. Judge Chen pointed out that the *Scruton* Court introduced
16  the second basis with the term "additionally," thereby indicating that its holding rested on two
17  independent grounds.

18  In its objections, Defendants argue the California court's holding that § 372 controls over §
19  664.6 "is pure dicta," and thus is not binding on the court. Defendants' argument is unpersuasive. As
20  Judge Chen noted, the *Scruton* Court's use of the term "additionally" indicates that this holding rested
21  on two rationales – one of which is that § 372 governs the repudiation of a minor's claim by a guardian,
22  rather than § 664.6. Defendants have failed to put forth any valid argument causing the Court to read
23  *Scruton* any other way.

24  Nevertheless, Defendants also argue that even if § 372 applies, Judge Chen erred in finding that
25  Ms. Gagey, as Devin's *guardian ad litem,* was entitled to repudiate the tentative compromise of Devin's
26  claim because this Court had not approved the Petition for Compromise To Minor's Claims. Defendants

27
28  [10] Section 372 states that guardians ad litem "shall have the power, *with the approval of the Court* in which the action or proceeding is pending, to compromise" the action. Calif. Code of Civ. Proc. § 372 (emphasis added).

advance that "Magistrate Zimmerman's day long participation in the settlement process satisfies the purpose and intent of [Cal. Code of Civ. Pro.] § 372." (Doc. #119) (Def. Obj. at 4:9-10.) Defendants further argue that Judge Chen's distinction between a magistrate judge's involvement and a district court court judge find no support in § 372. Defendants' arguments are unavailing.

As Judge Chen pointed out, Judge Zimmerman's role in presiding over a court-ordered mandatory settlement conference is distinguishable from a court approving the substance of a settlement. Specifically, Judge Zimmerman acted as a mediator facilitating the settlement process, but did not independently assess and approve the terms of the parties' agreement, as is required under § 372. Moreover, Defendants' argument that § 372 does not distinguish between magistrate judges and district court judges lacks merit. Section 372 is a California statute. It, therefore, has no reason to distinguish between federal magistrate and Article III judges. Rather, as Judge Chen correctly noted, § 372's focus is on the trial court's act of approving the *guardian ad litem's* compromise. As indicated above, Judge Zimmerman was not functioning in this capacity during the settlement conference. In fact, Judge Zimmerman indicated that the Petition for Compromise to Minor's Claims would need to be approved by the district court. (Doc. 101 - 7) (Transcript of Settlement at 5, 12.)

Based on the foregoing, the Court agrees with the R&R that: 1) § 372 controls in this matter, and 2) because the Court had not approved the Compromise, Ms. Gagey's repudiation was timely and effective.[11]  The Court therefore overrules Defendants' objection the these grounds. As Judge Chen noted, under *Scruton*, the court's finding that a repudiation was effective does not end the court's inquiry. Rather, once a guardian makes a timely repudiation, the trial court may unilaterally enforce the compromise if the court finds the guardian acted arbitrarily, capriciously and inimical to the minor's best interest. *Scruton,* 39 Cal. App. 4th at 1607, 1608; *Dacanay*, 573 F.2d at 1080. In the R&R, Judge Chen concludes that Defendants' sufficiently established that Ms. Gagey's repudiation meets this criteria.

b. Repudiation Arbitrary, Capricious and Inimical to Devin's Best Interests

---

[11]Defendants further object to this conclusion because at the May 4, 2005, hearing the parties agreed to a stipulation that the failure to approve the Petition for Compromise to Minor's Claims would not be raised as a procedural hurdle to enforcing the settlement. (Doc. 101 - 7) (Transcript of 5/4/05 hearing at 25, 26.) However, the effect of this stipulation does not change the result that Ms. Gagey made a timely and effective repudiation. Ms. Gagey filed an opposition to proposed settlement on April 14, 2005, weeks before the parties agree to the stipulation on May 4, 2005. This stipulation can not be seen as a retraction of a timely repudiation.

16

Plaintiffs challenge Judge Chen's conclusion that Ms. Gagey's repudiation meet the criteria of arbitrary, capricious and inimical to Devin's best interest. The Court therefore turns to Plaintiffs' objections. In their Objections, Plaintiffs contend that Judge Chen misapplied the standard enunciated in *Scruton,* and failed to consider the evidence supporting repudiation. Specifically, Plaintiffs assert:

> [W]hile Plaintiffs agree with the Magistrate Judge's legal analysis and enunciation of the relevant standard, they do not believe the Report actually applies this standard. Giving "some deference" to a guardian's repudiation, and presuming that the repudiation was valid, would logically require the Court to consider all the facts and that led to the repudiation. The Report does not do this.

(Doc. #120) (Plaintiffs Obj. at 8:16-19.)

The Court disagrees with Plaintiffs. As the R&R correctly points out, neither the *Scruton* nor *Dacanay* provide much guidance on how the Court is to apply the standard. The cases do indicate that when a guardian repudiates a settlement, "the decision of the guardian deserves some deference. Consequently, . . . the court has limited power to direct a settlement unilaterally, but to do so, the court must first find that the *guardian ad litem* has acted arbitrarily and capriciously in the sense that his conduct is inimical to the best interests of the court's ward." *Scruton*, 39 Cal. App. 4th at 1607, 1608 (citing *Dacanay*, 573 F.2d at 1080).

Reviewing the R&R, the Court finds that Judge Chen correctly applied the standard and came to the correct conclusion based on all of the evidence before him. Defendants have satisfied the burden of showing that the repudiation was inimical, contrary or adverse to Devin's best interest. Devin received representation from experienced counsel, who participated in a full day of negotiations before reaching a settlement. Furthermore, these negotiations followed months of court activity allowing counsel to evaluate the strengths and weaknesses of Devin's case.[12] Plaintiffs counsel realized many challenges and pitfalls existed that made this case extremely complicated. (See Doc. #77) (Daar Decl. in Support of Minor's Compromise.)

For instance, many problems existed with Plaintiffs' case. The coroner determined that the manner of death remained unknown. *Id.* (Daar Decl. ¶ 5). The coroner listed among the causes of death

---

[12] At the January 31, 2005, settlement conference, Plaintiffs' Counsel had the benefit of a ruling on defendant's Motion for Summary Judgment, extensive briefing by all counsel on the facts, liability and damage issues in the case. Moreover, over 27 depositions which included every eye witness to the detention, every officer involved, the county coroner and the physician who conducted the autopsy of Mr. Escobedo. Plus, the reports of all the experts had been exchanged.

17

methamphetamine intoxication and a pre-existing enlarged heart and not just force used by the police officers. *Id.* To the extent that the coroner also listed excited delirium as a cause of death, this remains a controversial theory, with some experts supporting the theory and other rejecting it; the validity of the theory is being litigated in numerous courts. *Id.* (Daar Decl. ¶¶ 7,10). Moreover, Plaintiffs were unable to allege specific actions attributable to specific police officers creating complex issues of group liability.[13] *Id.* (Daar Decl. ¶ 12).

Judge Chen highlighted several other problems with Plaintiffs' case that could substantially diminish the damages awarded for wrongful death, even if Plaintiffs prevailed on liability. For instance, Mr. Escobedo had a troubled past, including strained relationships with his children and their mothers. *Id.* (Daar Decl. ¶ 12). Notably, the incident in this case was triggered when Ms. Guidici made a 911 call and asked the police to remove Mr. Escobedo, who was causing a disturbance, from her home. *See* MJJ Order of 1/28/05, at 1-2. In their Motion to Enforce Settlement, Defendants identify other problematic evidence, including an incident in which Mr. Escobedo allegedly physically abused Ms. Guidici in front of Justine (slamming her against a dresser, slapping her face, and causing a cut to her wrist), and an incident in which Mr. Escobedo allegedly drove while intoxicated with Justin in the car. *See* Mot. at 11-12. As Judge Chen noted Devin faces some significant hurdles in establishing liability and damages. On these facts, Plaintiffs' case against Defendants is far from being "a sure thing."

As to the deference to be given to the guardian's decision to repudiate, the Court examines the reason given for the repudiation. In both *Scruton* and *Dacanay* the *guardian ad litem* provided some objective basis for the repudiation. *Dacanay v. Mendoza*, 573 F.2d 1075, 1077 (9th Cir. 1978); *Scruton v. Korean Air Lines,* 39 Cal. App. 4th 1596, 1602 (1995). Here, Ms. Gagey indicated that the basis for repudiation was Devin's desire, as expressed in a letter and declaration, to go to trial and see justice done. Devin stated, " I do not want to settle this case, unless the settlement is specific enough that it makes the police officers accountable for the death of my father. If there is not a settlement like that, I want to go to trial." (Doc. #96) (Ex. B, Devin Decl. ¶6.) The Court agrees with Judge Chen that Ms. Gagey's proffered justifications are "not grounded in an objective assessment of the strengths and weaknesses of the case and the settlement value of the case." Moreover, unlike the *guardian ad litem*

---

[13]Plaintiffs sued a total of eight different officers.

18

1 in *Scruton* and *Dacanay*, there are no new facts or evidence or legal arguments that have come to light
2 that undermine the propriety of the settlement.[14] Further, the Court agrees with Judge Chen's statement
3 that while Devin's views are important, they do not override his *guardian ad litem's* decision.

4 Rather, taking into account all of the above, the Court finds that Defendants have satisfied their
5 burden of showing that the repudiation was inimical, contrary or adverse to Devin's best interest. The
6 Court therefore overrules Plaintiffs' objections.

7 **4. The Settlement Should Not Be Enforced Against The Estate**.

8 Finally, Defendants object to Judge Chen's recommendation that the court deny the Defendants'
9 Motion to Enforce Settlement as to the Estate. Defendants submit that the absence of the administrators
10 from the settlement conference does not provide a valid basis for denying the Motion. The Court,
11 however, agrees with the Judge Chen's finding. As Judge Chen correctly found, although the Estate
12 lacks standing to bring a wrongful death claim, because the §1983 claim survives Mr. Escobedo's death,
13 the Estate has standing to assert the §1983 claim. See *Guyton v. Phillips*, 532 F.Supp. 1154, 1165-66
14 (N.D. Cal. 1981).

15 However, Defendants argue that whether or not the Estate has standing to assert a § 1983 action,
16 the court need only consider the administrator's fiduciary obligations to enforce the settlement.
17 Defendants contend administrators serve as neutral stakeholders with fiduciary obligations to protect
18 the interests of the heirs. *See, e.g. Graybiel v. Burke*, 124 Cal. App. 2d 255, 262 (1954). By contesting
19 the settlement, Defendants argue the administrators are acting on their own behalf[15] and failing to protect
20 the interest of the heirs, Devin and Justin. Defendants also insist Magistrate Judge created a notable
21 contradiction by recommending the court enforce the settlement as to Devin, but not as to the Estate
22 because Devin and Justin are the sole beneficiaries of the Estate.

---

24 [14]Particularly, in both *Scruton* and *Dacanay* the *guardian ad litem* learned new information and provided specific reasons why the settlement was inadvisable. For instance, an injured son's father repudiated a settlement after receiving new information that the injuries were more severe than originally diagnosed, and that the car that hit the minor had been traveling
25 at a greater speed than originally thought. *Dacanay,* 573 F.2d at 1077. Furthermore, in *Scruton* a *guardian ad litem* repudiated where new developments demonstrated the undervalued nature of the settlement. *Scruton*, 39 Cal. App. 4th at
26 1601. In that case, liability had already been established and other plaintiffs received jury verdicts significantly higher. *Id.*

27 [15]Defendants point to the administrators reasons for refusing to sign the settlement, "for us, this case is not about money, but about seeing some sort of justice done." (Doc. # 101 - 8) (Estate Letter to J. Zimmerman.) Along these lines,
28 Defendants argue Mr. Escobedo's siblings does not have standing to bring a § 1983 action in their own name. *Ward v. City of San Jose*, 967 F.2d 280 (9th Cir. 1992).

19

As the R&R acknowledged an argument could be made that the settlement should be enforced against the Estate because, even if the Estate prevailed on their claim, in the end, Justin and Devin would reap the benefits. This does not change the fact that the Estate is a proper party in this case with legal standing with respect to the §1983 claim. Further, as the R&R points out, the administrators never received notification about the settlement conference, did not attend the conference, and consistently opposed the settlement. Consequently, the requisites for enforcing the settlement under § 664.6 were never satisfied. See Cal. Code of Civ. Proc. § 664.6 (requiring for an enforceable settlement either that the parties to the settlement stipulate to such in writing outside the presence of the court or stipulate to such orally before the court.)

In sum, because the Estate has standing to assert Mr. Escobedo's §1983 claim, the Estate was a proper party to the case and the settlement. Because the Estate's administrators did not agree to the settlement, either in writing outside the court or orally before the court, the settlement is not enforceable pursuant to § 664.6. Accordingly, the Court recommends that Defendant's Motion to Enforce Settlement with respect to the Estate be denied.

### IV. CONCLUSION

For the foregoing reasons, the Court overrules Plaintiffs' Objections to Magistrate Judge's Report and Recommendation (Doc. #120) in their entirety. Likewise, the Court overrules Defendants' Objections to Magistrate Judge's Report and Recommendation (Doc. #119) in their entirety.

The Court adopts the R&R date 9/30/2005 (Doc. #118). Accordingly, the Court DENIES Defendants' Motion to Enforce Settlement with respect to the Estate of Ricardo Escobedo. The court GRANTS Defendants' Motion to Enforce Settlement as to Devin.

**IT IS SO ORDERED.**

Dated: March 2, 2006

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE